AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of New Mexico



FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO
APR 2 4 2025
MITCHELL R. ELFERS
CLERK OF COURT

| In the Matter of the Search of | | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) ) ) ) | Case No. 25-763mR |
| 1220 N. Reymond Street, Las Cruces, New Mexico, 88005, and Seizure of Electronic Devices | | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

1220 N. Reymond Street, Las Cruces, New Mexico, 88005, more fully described in Attachment A, which is attached and incorporated herein by reference.

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, hereby incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(5) | Illegal Alien in possession of a firearm |
| 18 U.S.C. §1512 (c)(1) | Tampering or Attempted Tampering |
| 18 U.S.C. § 371 | Conspiracy to Tamper |

The application is based on these facts:

See Affidavit in Attachment C, attached and incorporated herin by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

BRIANA R VIGIL   Digitally signed by BRIANA R VIGIL
Date: 2025.04.24 11:46:52 -06'00'
*Applicant's signature*

Briana R. Vigil, Special Agent HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
*(specify reliable electronic means)*

Date: 4/24/2025

_____
*Judge's signature*

City and state:  Las Cruces, New Mexico

Gregory J. Fouratt, United States Magistrate Judge
*Printed name and title*

**Attachment A**

**Description of the Residence to be Searched and Evidence to be Seized**

1220 N. Reymond Street, Las Cruces, New Mexico 88005.  The residence is a beige in color stucco dwelling with a brown roof.  The residence has the numbers "1220" painted in the front on the curb.



The affidavit, see Attachment C, is submitted in support of the warrant to search, and seize information, more fully described in Attachment B, contained on the cell phones belonging to and utilized by Cristhian Ortega and Nancy Cano.

Cristhian Ortega's phone is described as: An iPhone with a black phone case.

Nancy Cano's phone is described as: An iPhone with a gold case.

   

Cristhian Ortega's iPhone          Nancy Ortega's iPhone

1

This warrant authorizes the onsite forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

During the execution of the search of the premises described in Attachment A, law enforcement personnel are also specifically authorized to compel Nancy Cano to provide biometric features, including pressing fingers (including thumbs) against and/or putting a device in front of a face, or any other security feature requiring biometric recognition, of:

      a.      where the devices are limited to those which are capable of containing and reasonably could contain fruits, evidence, information, contraband, or instrumentalities of the offense(s) as described in the search warrant affidavit and warrant attachments, for the purpose of attempting to unlock the devices' security features in order to search the contents as authorized by this warrant.

## ATTACHMENT B

PARTICULAR THINGS TO BE SEIZED/INFORMATION TO BE RETRIEVED
The particular things to be seized include all records, wherever located and in whatever format, stored on the devices described in Attachment A that are related to the violations of:

- Title 18 U.S.C. § 922 (g)(5), for an illegal alien, illegally or unlawfully in the United States to possess a firearm and/or ammunition.

- Title 18 U.S.C. § 1512 (c)(1), whoever corruptly alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for the use in an official proceeding.
- Title 18 U.S.C. § 371, Conspiracy

1. Phone numbers, names, usernames, email addresses, residential addresses, and other identifying information of co-conspirators and other associates of the user of the devices;

2. Audio and video calls made to or from the devices, along with the duration and date and time each such communication occurred;

3. Any message logs or messages, whether sent from, to, or drafted on, the devices, along with the date and time each such communication occurred;

4. The content of voice mail messages stored on the devices, along with the date and time each such communication occurred;

5. Photographs or video recordings, along with the date and time each such photograph or video recording was created;

6. Information relating to the schedule, whereabouts, or travel of the user of the devices;

7. Information relating to other methods of communications, including the contents of those communications, utilized by the user of the devices / and stored on the devices;

8. Bank records, checks, credit card bills, account information and other financial records; and

9. Evidence of user attribution showing who used or owned the devices, such as social media accounts, email addresses, messages, location information, photographs and videos, phonebooks, saved usernames and passwords, documents, and internet browsing history.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF 1220 N. REYMOND STREET, LAS CRUCES, NEW MEXICO 88005, AND SEIZURE OF ELECTRONIC DEVICES | Case No. _25- 763 mR_<br><br>**Filed Under Seal** |

### ATTACHMENT C
### AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Briana Vigil, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41(c)(4) of the Federal Rules of Criminal Procedure for a warrant to search the premises located at 1220 North Reymond Street, Las Cruces, New Mexico 88005, hereinafter "Premises," further described in Attachment A, for purposes of searching for and seizing the items described in Attachment B.

2.      I am a Special Agent (SA) with Homeland Security Investigations (HSI) and have been so since April 2024.  As part of the training to become an HSI Special Agent, I attended six months of specialized training sponsored by the Federal Law Enforcement Training Center in Glynco, Georgia. I am currently assigned to the Border Enforcement Security Task Force investigative group in Las Cruces, New Mexico.  As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

3.      The following information contained in this affidavit, your affiant has gained through investigation as well as your affiant's own experience, training, and information provided by other law enforcement agents who your affiant believes to be reliable.  Since this affidavit is being submitted for the limited purpose of securing a search warrant, your affiant did not include each and every fact known concerning this investigation.  I have set forth only those facts that your affiant believes to be necessary to establish probable cause for a search of the Premises.  Your affiant makes this Affidavit based on personal knowledge and on the basis of information received from other law enforcement officers and/or agents.

4.      As will be shown below, there is probable cause to believe that evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 922 (g)(5), for an illegal alien, illegally or unlawfully in the United States to possess a firearm and/or ammunition and  Title 18 U.S.C. § 1512 (c)(1); whoever corruptly alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for the use in an official proceeding, are currently located at the Premises.  Your affiant submits this affidavit in support of a search warrant authorizing a search of the Premises, which is described in Attachment A.  Your affiant requests authority to search the Premises, including the residential dwelling, vehicles on the premises, vehicles associated to the targets that are parked on the street in relation to the premises and any location within these locations where the items specified in Attachment B may be found, and to seize all items listed in Attachment B as instrumentalities, fruits, and evidence of crime.

2

## IDENTIFICATION OF THE PLACE TO BE SEARCHED
## AND THE ITEMS TO BE SEIZED

5.     The property to be searched is located at 1220 N. Reymond Street, Las Cruces, New Mexico 88005, fully described in Attachment A.  Items to be seized and searched are any cell phones described in Attachment B.

## RELEVANT STATUTES

6.     Title 18 U.S.C. § 922 (g)(5), for an illegal alien, illegally or unlawfully in the United States to possess a firearm and/or ammunition that has traveled in interstate or foreign commerce.

7.     Title 18 U.S.C. § 1512 (c)(1); whoever corruptly alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for the use in an official proceeding; 18 U.S.C.§ 371, Conspiracy.

## DETAILS OF THE INVESTIGATION

8.     In January 2025, Homeland Security Investigations (HSI), Las Cruces initiated an investigation into Cristhian Ortega-Lopez (hereafter identified as Ortega), following the receipt of an anonymous tip submitted on the HSI Tip line. The tip alleged that Ortega, an illegal alien from Venezuela and a suspected member of a criminal gang, was residing with other illegal aliens in the United States unlawfully at the address located at 1220 N. Reymond Street, Las

3

Cruces, New Mexico and was in possession of firearms.

9.      Based on the findings of this investigation, it was determined that Ortega unlawfully entered the United States on December 15, 2023. Due to overcrowding, Ortega was released pending removal proceedings on or about December 18, 2023. On April 24, 2024, Ortega filed a request for immigration relief, which will be considered by an immigration judge as part of his removal proceedings. To date, Ortega remains subject to pending removal proceedings.

10.      HSI has identified Ortega posted photos on his social media accounts in possession of firearms. Specifically, on December 30, 2024, Ortega uploaded a collection of photos and videos to his personal Facebook account featuring himself and other Venezuelan illegal aliens, at a Shooting Range in Las Cruces, New Mexico, in possession of firearms and a large amount of ammunition.

11.      In addition to photos of Ortega holding a black semi-automatic handgun, which appears to be identified as a Sig Sauer P365 handgun, Ortega posted a video on his personal Facebook account showing him shooting an AR-15 rifle with a suppressor. Ortega was positively identified as the individual in the video based on his distinctive tattoos.

12.      On February 28, 2025, two residential federal search warrants were executed at the Premises, specifically the second residence at the Premises located to the rear and right of the first residence, and at 1200 N. Reymond St. Las Cruces, NM, in connection with Ortega. The second residence at the Premises was the location where Ortega was residing with other illegal

aliens. Ortega and the other individuals residing at the same location as Ortega were taken into custody along with the seizure of numerous digital devices. Three cell phones were amongst the seized items that belonged to Ortega. Law Enforcement seized four firearms from the second residence that a search was conducted on connected to Ortega.

13. On February 28, 2025, during a post-Miranda interview, Ortega advised that in December of 2023, he illegally entered the United States from Mexico into Texas. According to Ortega, in April of 2024, Ortega began living at a married couple's residence, identified as Jose and Nancy Cano. According to Ortega, the "casita" located on the Cano's property, in which, Ortega and other illegal aliens began living at the "casita" after doing a couple of jobs for them. While living at the Cano's residence, Ortega was introduced to the Canos' daughter, identified as April Cano, who possessed a large number of firearms. Ortega explained to law enforcement that April Cano allowed him to hold and sometimes shoot various firearms. Ortega admitted that he recognized four firearms that were shown to him during the interview, that had been seized from April Cano's residence on February 28, 2025, following the execution of a search warrant. Ortega further advised that three of the firearms shown to him were the same firearms depicted in the photos on his Facebook account, specifically a Geissel SD 5.56 rifle, a Sig Sauer P365 9mm handgun, and a Volquat1sen VT2 .22 caliber rifle. Ortega admitted to law enforcement that he knew it was illegal for him to possess firearms.

14. The residential search warrants also authorized the forensic analysis of the cell phones seized at the residences. In addition, law enforcement asked Ortega for consent to search

the cell phones belonging to him. Ortega agreed and signed the consent form. The following messages were identified from Ortega's Facebook messenger that were on the extraction of the cell phone.

15.     Messages between Ortega and Armando Chavez, date stamped February 22, 2024, revealed the following communication and images.

**Ortega**: Two image attachments. (One photo with an unidentified individual and the second photo with two unidentified individuals.)

**Ortega** : Voice Recording (unable to retrieve)

**Armando Chavez**: "Ojo con esta mandando fotos Haci no te vallas a comprometer por aya con esos panas sabes como es mano"

**Armando Chavez**: "Hablale claro a ver que dice si puede conseguir una granada por aya o dos 38"

**Ortega**: 3 Voice Recordings ( unable to retrieve )

**Armando Chavez**: "Bello mano esa es voy hacer un billete y me llego por aya"

**Armando Chavez**: Voice Recording ( unable to retrieve)

**Ortega**: 2 Voice Recordings (unable to retrieve)

**Armando Chavez**: Voice Recording (unable to retrieve)

**Ortega**: Voice Recording (unable to retrieve)

**Armando Chavez**: Image attachments. (A set of gruesome photographs of two brutal

murder victims that includes mutilated bodies, decapitated heads and dismembered hands.)

16.    Messages between Ortega and "Usario de Facebook" (100080650686950), date stamped April 30, 2024, revealed the following communication.

**Cristhian Ortega-Lopez-Lopez**: "El 16 tengo una audiencia con un juez y lo más probable es que caiga preso eso me tiene loco sabes"

**Usario de Facebook**: "Pero Porque Mor Que Hiciste niño"

**Ortega**: "Pues le pese a un policía pero eso es aparte la cuestión es que yo tengo una ak47 en la costilla y tu sabes que eso representa al tren de Aragua"

**Ortega**: "Y no me puedo fugar o cambiar de estado porque me va peor"

**Usario de Facebook**: "Siiii Mor Te Va Peor"

**Ortega**: "Si ella no sabe pero tampoco la quiero preocupar sabes"

**Usario de Facebook**: "Entonces Que Piensa Hacer No Le Digas Todavía Bebé"

**Ortega**: "Eso me tiene mal Aller mi patrona lloro te lo juro y pues ella me esta apoyando como el marido es juez pues noce que pueda pasar"

17.    Upon further investigation of Ortega's cellphones and at least one Facebook account, law enforcement identified videos and photographs that displayed clear indicators of Tren de Aragua (TdA) affiliation, a transnational criminal organization and U.S. designated Foreign Terrorist Organization from Venezuela. Observations observed on Cristhian Ortega's

7

cellphones include tattoos, clothing apparel, and displaying hand gestures, commonly associated with TdA. These visual indicators, widely recognized as symbols of TdA and consistent with existing intelligence from the U.S. Department of Homeland Security, provide strong evidence of Cristhian Ortega-Lopez's membership in TdA.

18.    On April 22, 2025, law enforcement submitted a request to the Dona Ana County Detention Center (DACDC) for recorded jail calls, messages, videos, and deposits pertaining to Ortega. On April 23, 2025, law enforcement reviewed video calls provided from DACDC in which Nancy Ortega, owner of the Premises, appeared to be in possession of what is believed to be Ortega's fourth mobile phone in video calls.

19.    Specifically, in a video call between Nancy Cano and Ortega dated March 7, 2025, Nancy Cano is seen with a black iPhone in her hand which is believed to be Ortega's phone. Nancy Cano calls an individual on WhatsApp on the black iPhone and speaks to an individual by the name of "Michelle." Nancy Cano provides Michelle her personal phone number, 575-644-4921 to call so that Michelle can have a face call with Ortega. Nancy did in fact receive a call on what appeared to be her personal phone in a gold case from Michelle. Nancy Cano is then seen facilitating a call between Ortega and Michelle. (Exhibit 1)

20.    In an additional video call between Nancy Cano and Ortega dated April 20, 2025, Nancy Cano and Ortega are discussing Ortega deleting his Facebook account. The following is a summary of the discussion between Nancy Cano and Ortega and not a verbatim record of the conversation. In the video call, Nancy Cano is heard asking Ortega if his Facebook account can

8

be deleted. Ortega responds, "Yes, to erase?" Nancy Cano then directs Ortega to ask his attorney the next day and to provide him the information to erase the Facebook account. Ortega then responds to Nancy Cano saying he cannot remember the information, but he [his attorney] can get it. Nancy Cano responds to Ortega by saying, I don't know but ask him tomorrow. Ortega tells Nancy Cano the Facebook account was on his phone, that's in her possession (the "black one,") and that she can erase it. Ortega continues to say you can erase it because it is open, implying the Facebook account. Ortega then states Nancy Cano can get into the phone, select "eliminate" and delete it. Nancy Cano tells Ortega to call the lawyer to see what he says. Ortega tells Nancy Cano that either way, he is going to talk to Michelle so she can communicate with Nancy Cano on WhatsApp so she can explain how to delete Ortega's Facebook account from that phone. Nancy Cano says "ok" to Ortega. Ortega reminds Nancy Cano that he had two phones and two Facebook accounts, and that he [Ortega's attorney] is going to have to eliminate it (meaning the other Facebook account) because the other phone is with the Federals. Nancy Cano acknowledges what Ortega says.

21.    Based on the communication between Ortega and Nancy Cano regarding "Michelle" making contact with Nancy Cano to assist in the deletion of Ortega's Facebook account, this leads law enforcement to believe Nancy Cano was going to take steps to facilitate the destruction of evidence because Ortega's other phones had evidence of his illegal possession of firearms and ammunition.

22.    Additionally, on February 28, 2025, the day the search warrants were executed,

9

and Ortega was taken into custody, agents permitted Ortega to make a phone call before being transported to DACDC. Agents provided Ortega access to the mobile devices that had been seized. Ortega stated that the phone containing the number he wished to call was not among the mobile devices available to him. Based on this interaction, law enforcement formed the belief that one of Ortega's mobile devices may not have been recovered during the execution of the search warrant. Ortega was charged with a violation of 18 U.S.C. § 922 (g)(5) and has remained in custody pending future official criminal proceedings.

23.    Your affiant respectfully requests the issuance of this warrant to seize Ortega's fourth cell phone located at the Premises that was not seized during the search warrant executed on February 28, 2025. Your affiant also requests to seize Nancy Cano's cell phone that was utilized to communicate with Ortega and Michelle in order to facilitate the destruction of evidence on Ortega's Facebook account. I believe there is probable cause that there is evidence of violations of 18 U.S.C. § 922 (g)(5) and Title 18 U.S.C. § 1512 (c)(1) 18 U.S.C. § 371 on Cristhian Ortega's cell phone in Nancy Cano's possession and evidence of a violation of 18 U.S.C. § 1512 (c)(1) and 18 U.S.C. § 371 on Nancy Cano's cell phone. This request is made to prevent additional deletion or alteration of data on the devices, which could undermine the integrity of the investigation and future official proceedings.

## BIOMETRIC ACCESS TO DEVICES

24.    I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices,

10

particularly newer mobile devices and laptops, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners, facial recognition features and iris recognition features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

      a.    If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints. For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device. Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) located at the bottom center of the front of the device. The fingerprint sensors found on devices produced by other manufacturers have different names but operate similarly to Touch ID.

      b.    If a device is equipped with a facial-recognition feature, a user may enable the ability to unlock the device through his or her face. For example, this feature is available on certain Android devices and is called "Trusted Face." During the Trusted Face registration process, the user holds the device in front of his or her face. The device's front-facing camera then analyzes and records data based on the user's facial characteristics. The device can then be unlocked if the front-facing camera detects a face with characteristics that match those of the registered face. Facial recognition features found on devices

11

produced by other manufacturers have different names but operate similarly to Trusted Face.

      c.      If a device is equipped with an iris-recognition feature, a user may enable the ability to unlock the device with his or her irises.  For example, on certain Microsoft devices, this feature is called "Windows Hello."  During the Windows Hello registration, a user registers his or her irises by holding the device in front of his or her face.  The device then directs an infrared light toward the user's face and activates an infrared-sensitive camera to record data based on patterns within the user's irises.  The device can then be unlocked if the infrared-sensitive camera detects the registered irises.  Iris-recognition features found on devices produced by other manufacturers have different names but operate similarly to Windows Hello.

      d.      In my training and experience, users of electronic devices often enable the aforementioned biometric features because they are considered to be a more convenient way to unlock a device than by entering a numeric or alphanumeric passcode or password. Moreover, in some instances, biometric features are considered to be a more secure way to protect a device's contents.  This is particularly true when the users of a device are engaged in criminal activities and thus have a heightened concern about securing the contents of a device.

      e.      As discussed in this Affidavit, I have reason to believe that one or more digital devices will be found during the search.  The passcode or password that would

12

unlock the devices subject to search under this warrant currently is not known to law enforcement. Thus, law enforcement personnel may not otherwise be able to access the data contained within the devices, making the use of biometric features necessary to the execution of the search authorized by this warrant.

f.       I also know from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, that biometric features will not unlock a device in some circumstances even if such features are enabled. This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period of time. For example, Apple devices cannot be unlocked using Touch ID when: (1) more than 48 hours has elapsed since the device was last unlocked; or, (2) when the device has not been unlocked using a fingerprint for 8 hours *and* the passcode or password has not been entered in the last 6 days. Similarly, certain Android devices cannot be unlocked with Trusted Face if the device has remained inactive for four hours. Biometric features from other brands carry similar restrictions. Thus, in the event law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

g.       Due to the foregoing, if law enforcement personnel encounter any devices that are subject to seizure pursuant to this warrant and may be unlocked using one of the aforementioned biometric features, I request permission to: (1) press or swipe the fingers

13

(including thumbs) of any adult at that residence who has access to electronic devices to the fingerprint scanner of the devices found at the Premises; (2) hold the devices found at the Premises in front of the face of any adult at that residence who has access to electronic devices and activate the facial recognition feature; and/or (3) hold the devices found at the Premises in front of the face of any adult at that residence who has access to electronic devices and activate the iris recognition feature, for the purpose of attempting to unlock the devices in order to search the contents as authorized by this warrant. The proposed warrant does not authorize law enforcement to request that any adult at that residence who has access to electronic devices state or otherwise provide the password or any other means that may be used to unlock or access the devices. Moreover, the proposed warrant does not authorize law enforcement to ask any adult at that residence who has access to electronic devices to identify the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

25. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on a device. This information can sometimes be recovered with forensics tools.

26.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

    a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the

application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f.  I know that when an individual uses an electronic device to post videos and images to social media, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

27.  *Nature of examination*. Based on the foregoing, and consistent with Rule 41 (e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but

16

not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

28.     Based on the foregoing information, I have probable cause to believe that evidence of crime, contraband, fruits of a crime, other items illegally possessed, and property designed for use, intended for use or used in committing a crime, that is, committing violation of, by knowingly assisting illegal aliens in the commission of an offense against the United States, specifically the illegal possession of a firearm in violation of 18 U.S.C § 922 (g)(5) and alter, destroy, mutilate, or conceal a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for the use in an official proceedings in violation of Title 18 U.S.C. § 1512 (c)(1) and Title 18 U.S.C. § 371;  as set forth herein and in Attachment B, are currently located at 1220 North Reymond Street located in Las Cruces, New Mexico.  I, therefore, respectfully request that a search warrant be issued authorizing the search for, seizure of, and search of, the items set forth in Attachment B.

## RETENTION OF IMAGE

29.     The government will retain a forensic image of each electronic storage device subjected to *analysis* for a number of reasons, including proving the authenticity of evidence to be used at trial; responding to questions regarding the corruption of data; establishing the chain of custody of data; refuting claims of fabricating, tampering, or destroying data; and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

17

## **CONCLUSION**

30.    I submit that this affidavit supports probable cause for a search warrant
authorizing the search of the Premises described in Attachment A to seek the items described in
Attachment B.

31.    Assistant United States Attorney's Maria Armijo and Randy Castellano reviewed
and approved this search warrant application.

32.    I declare under penalty of perjury that the foregoing is true and correct to the best
of my knowledge.

Respectfully submitted,

*Briana Vigil*

Briana R. Vigil
Special Agent
Homeland Security Investigations

Subscribed electronically and sworn telephonically
to me on this 24 day of April , 2025:

GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

18

**Exhibit 1**



